[Civ. No. 12244.   First Dist., Div. One.   Mar. 4, 1943.]

MAUDE BARTON, Appellant, v. THE CAPITOL MARKET (a Copartnership) et al., Respondents.

Elliott Johnson for Appellant.

Weinmann, Quayle & Berry for Respondents.

PETERS, P. J.—Plaintiff appeals from a judgment of nonsuit. The action was instituted by plaintiff to recover for personal injuries received when she slipped and fell on the sidewalk bordering defendants' place of business. The theory of plaintiff was that defendants had frequently sprayed the corner of the building where the accident occurred, resulting in an oily, slippery stain running down the building and across the sidewalk upon which she slipped. At the con-

clusion of plaintiff's case defendants moved for a nonsuit on the grounds that no evidence had been offered to show that defendants had placed or permitted to remain any oily or greasy substance on the sidewalk where plaintiff fell; that there was no evidence proving, or from which it could be inferred, that defendants were guilty of negligence, or that plaintiff fell as the proximate result of any negligent acts of defendants. The court granted the motion and stated: ". . . the Court feels that the case as it now stands, is not one in which the Court could conscientiously permit a verdict to stand in favor of the plaintiff, it being necessary to indulge in speculation, guess, surmise and conjecture, so far as defendants' connection with the condition there existing at the time of the accident is concerned."

The rules applicable to the power of the trial court to grant a nonsuit are too well settled to require extended discussion. They were succinctly stated in *Estate of Lances*, 216 Cal 397, 400 [14 P.2d 768], as follows: "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (*Newson* v. *Hawley*, 205 Cal. 188 [270 P. 364]; *Perera* v. *Panama Pacific Int. Exp. Co.*, 179 Cal. 63 [175 P. 454]; *Estate of Sharon*, 179 Cal. 447 [177 P. 283]; *Estate of Gallo*, 61 Cal.App. 163, 175 [214 P. 496]; 24 Cal.Jur., pp. 912-918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, 228 [263 P. 799].)" See, also, *Estate of Flood*, 217 Cal. 763 [21 P.2d 579); *Berger* v. *Lane*, 190 Cal. 443 [213 P. 45]; *McClurken* v. *Ralph's Grocery Co.*, 130 Cal.App. 529 [20 P.2d 66].)

Inasmuch as this accident occurred on the public sidewalk, there is another rule of law that must be kept in mind. ▇ In

the absence of statute there is no affirmative obligation on the abutting property owner to keep the sidewalk in a safe condition. (*Granucci* v. *Claasen*, 204 Cal. 509 [269 P. 437, 59 A.L.R. 435]; *Daly* v. *Mathews*, 49 Cal.App.2d 545 [122 P.2d 81].) It is equally well settled, however, that if the abutting owner by positive action creates a condition which is likely to cause harm to persons lawfully using the sidewalk, and a person is injured as a proximate result thereof, the property owner is liable. Stated another way, the owner of premises abutting a sidewalk is under a duty to refrain from doing any affirmative act that would render the sidewalk dangerous for public travel. (See cases collected 43 C.J. p. 1101, sec. 1865.)

With these rules in mind, we turn to a consideration of the evidence. ▇ The defendants Murphey and Hefter own and operate the Capitol Market at Shattuck Avenue and Vine Street in Berkeley, California. Shattuck Avenue runs north and south, while Vine Street runs east and west. The store is on the southwest corner of the intersection, the front and entrance being an Shattuck Avenue, while the side of the building extends westward along Vine Street. The sidewalk, on both Shattuck Avenue and Vine Street, abuts the market. Above the market, at the corner, there projects, from the second story over the sidewalk, a bay window. Facing Shattuck Avenue there is a large display window, and facing Vine Street there is a smaller display window. Beyond the latter, on the Vine Street side, the building is of normal wooden construction. Several drain pipes run down the side of the building and drain directly on the Vine Street sidewalk. There is a definite down-grade from Shattuck Avenue to Henry Street, the next street paralleling Shattuck Avenue to the west. The sidewalk on the Vine Street side also has a slight down-grade toward the gutter. The corner of the building, below the display windows, is constructed of black material. Under the display windows the construction is of white tile and stucco.

The accident occurred on October 7, 1940, at about 5:45 p. m. It was dark, raining, and the streets and sidewalk were wet. There was a sheet of water running on the Vine Street sidewalk abutting the market caused by the drainage discharged thereon from the building. The plaintiff testified that she had taken the electric train and alighted at the inter-

section; that she immediately proceeded to take shelter under the awning of McHaffie's Drug Store, located on the southeast corner of the intersection; that after waiting a short period she crossed Shattuck Avenue and proceeded onto the sidewalk on the corner on which defendants' store is located; that she walked in close to the side of the building so that she might avoid the sheet of water running on the sidewalk, and in order to get the protective shelter afforded by the projecting bay window; that she took about two steps westerly from the Shattuck Avenue property line of the store when she slipped and fell and broke her wrist; that she was close to the side of the building when she fell; that the sidewalk where she fell was slippery and greasy; that the hand upon which she fell was so greasy that she was unable to support herself on it; that there was grease and oil on her hand; that when she arose to her feet her "shoes were full of oil and my coat was full of oil, or grease."

Plaintiff produced two other witnesses—Fred L. Gibson, who had worked at McHaffie's Drug Store for six years, and who observed the accident, and Mrs. Mary Potts, who had lived in the immediate vicinity for ten years. Gibson testified that the store owners in the neighborhood were in the habit of spraying their buildings, but the court refused to permit him to testify as to the nature of the spray used by the merchants for spraying purposes. He did testify that prior to October 7, 1940, he had observed men coming out of defendants' market and spraying the corner of the building where the accident occurred. Mrs. Potts testified that on several occasions prior to October 7, 1940, she had observed the boy who drove defendants' delivery truck spraying some sort of liquid on the corner of the building where the accident occurred. Gibson testified that prior to the accident he had noticed there were "black oily stains" on the Vine Street sidewalk bordering defendants' premises, and that the side of the building at the corner was similarly stained; that the spraying he had observed was right at the corner. Mrs. Potts testified that prior to October 7, 1940, she had observed an oily stain on the Vine Street sidewalk extending from the tile beneath the display window of the store out across the sidewalk in a diagonal line; that the stain "leads from the tile out onto the sidewalk"; that the stain "runs a little way along the building and then down"; that she had observed this condition for four or five years prior to the accident;

that when it rains, water sweeps in sheets across the sidewalk from the building drains; that the stains had the appearance of oil, and that she could see the oily substance anytime the street happened to be wet. Defendant Murphey, called under section 2055 of the Code of Civil Procedure, testified that dogs had, from time to time, "created nuisances" on the side of the building, and admitted that spraying had been done near the Shattuck Avenue entrance of his store, but denied that the spraying had been done to repel dogs, stating that it was done to control ants, and denied that any spraying at all had been done on the corner of the building.

This is a fair summary of the evidence on the issue of liability. Tested by the standards set forth in the *Estate of Lances, Estate of Flood,* and the other cases cited, *supra,* there can be no reasonable doubt but that plaintiff established a sufficient case to go to the jury. She offered evidence which, if believed, established that defendants' employees used some substance to spray the corner of the building where the accident occurred; that where the building was so sprayed a stain formed; that the stain ran down from the building across the sidewalk; that the stain was continuous from the building and across the sidewalk; that on the sidewalk, particularly when wet, the stain was oily, greasy and slippery. From that evidence, the inference reasonably could be drawn that the spraying caused the stain.

In the nature of things it frequently happens that a fact must be proved by indirect evidence. The Code of Civil Procedure (sec. 1958) defines an inference as "a deduction which the reason of the jury makes from the facts proved." As long as the inference is not contrary to reason, to physical laws, or the course of nature, it is for the jury and not the trial judge to determine whether it shall be drawn. On a motion for a nonsuit the trial court must indulge in favor of plaintiff in every legitimate inference which can be drawn from the evidence. Tested by these standards, it is apparent that it was for the jury and not the trial judge to determine whether the spraying caused the stain.

The judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.