[Civ. No. 3121.   Fourth Dist.   Jan. 8, 1944.]

WILETTA LAY, Respondent, v. PACIFIC PERFORAT-ING COMPANY, LTD. (a Corporation) et al., Appellants.

234

Sidney A. Moss for Appellants.

Claflin & Chain for Respondent.

GRIFFIN, J.—On February 16, 1943, plaintiff and respondent Mrs. Lay, accompanied by her husband and a four-year-old boy, left their residence in Bakersfield at about 2:30 p. m. to go to a lunch room about five blocks away. They proceeded on the sidewalk, which was about three feet wide and ran immediately in front of the plant of the defendant company. As they were about to pass those premises, about fifteen feet ahead of them they saw a small pool of oil on the sidewalk, which had been allowed to escape from the premises of the defendant company. In this respect Mr. Lay testified that just ahead of them he noticed "a considerable amount of shavings" and "there was some oil, just how much, I didn't pay any attention"; that as to whether the oil he then noticed was at the "same place that the oil was that your wife fell in," he answered: "I am not sure that it was." On this subject Mrs. Lay testified that on the way over to the restaurant while passing defendants' premises, she noticed some oil on the sidewalk. She did not testify that she observed the exact character of the oil spot or the extent of its coverage at that time. Defendant Guerin testified that at the spot where plaintiff fell he found "loose oil," "dirt" and a few "steel shav-

ings." He was asked if a person walked on those steel shavings saturated with oil whether it would be slippery, and he replied: "No, it would be just like walking on a cinder path." Instead of passing through the escaping oil, plaintiff and her husband crossed the street to the lunch room, which was a more direct route. About a half hour later, they returned to the sidewalk, and passed in front of defendants' premises on their way home. Mr. and Mrs. Lay were conversing about the type of work being conducted and maintained by defendant company in its yard: They were looking through a wire fence at the plant maintained by it. As they thus proceeded, Mrs. Lay's foot slipped from under her in a pool of oil, which was about 12 inches wide and 18 inches in length. She fell directly upon her hip and received an injury to her coccyx. She was taken to the hospital. The following day she was released and was later treated by the company doctor for a period of over one and a half months. At the time of the trial she was still undergoing treatment for traumatic arthritis claimed to have been caused by the injury.

Defendants defended the action, denied negligence on their part, and pleaded contributory negligence on the part of the plaintiff. A trial by jury resulted in a verdict for plaintiff for $7,500 which, on a motion for new trial, was conditionally reduced to $4,500 by the trial court. Defendant company and defendant Guerin, as supervisor of the company's plant, appealed from the judgment in the lesser amount.

Defendants first claim that there was no act of negligence on their part established by the evidence. They concede that the evidence sufficiently establishes that "the oil came in some manner from the premises of the defendant company," but contend that there was no evidence from which the jury could conclude that the defendants themselves actually placed the oil on the sidewalk or that they engaged in any activity by which it accumulated there with their knowledge. In other words, it is claimed that where the plaintiff cannot show that the defendants' activity is responsible for placing the obstruction or foreign substance on the sidewalk the plaintiff has a definite burden of proof of showing (1) that the accident was occasioned by a condition which was actually known to the defendants; or (2) that the oil in question had remained on the sidewalk for so long a time before the occurrence of the accident that it would have charged the defendants, in the exercise of reasonable care, with notice of its existence,

citing such cases as *Crawford* v. *Pacific States Savings & Loan Co.*, 22 Cal.App.2d 448 [71 P.2d 333]; *Matherne* v. *Los Feliz Theatre*, 53 Cal.App.2d 660 [128 P.2d 59] and *Mona* v. *Erion*, 223 App.Div. 526 [228 N. Y. S. 533].

█ The evidence clearly shows that the defendants were in the habit of keeping large quantities of the same character of oil on their premises and that such oil was used in the perforation of pipe, and that there was a quantity of that character of oil on the premises on the day in question; that the premises of defendant company which abutted the sidewalk were approximately one foot higher than the elevation of the sidewalk; that oil similar to the oil on the sidewalk was, on the day of the injury, traced back from the pool on the sidewalk into the bank on defendants' property; that defendants maintained an oil sump on the premises in connection with their work; that on the day of the injury the soil on defendants' premises was "saturated in oil" and "filled with shavings cut from pipe"; that defendants had knowledge that such oil and pipe shavings had accumulated on the sidewalk near the same area in the past; that defendants had on occasions prior to February 16, 1943, steam-cleaned oil, oil marks and pipe shavings from the sidewalks; that the last occasion of cleaning occurred about February 13, 1943; and that the sidewalk was inspected by defendants once each week to determine the necessity of steam-cleaning the oil from it; that defendant Guerin told plaintiff's husband, right after the fall, that they ".had had some trouble with that oil overflowing through the rain" and he also said "the city had said something to them more than once before and he had had some men to work on it that morning, but they had not gotten to cleaning off the sidewalk yet." Guerin denied such a .conversation. However, the constable who served defendant Guerin testified that after Guerin read the complaint he remarked: "That is one thing they told the truth on was the small amount of oil running out of the yard onto the sidewalk." The evidence clearly establishes that the defendants were under a duty to refrain from doing any affirmative act that would render the sidewalk dangerous for public travel and that defendants' act in permitting oil to run from defendants' premises to the sidewalk and in not keeping the sidewalk free and clear from such oil after knowledge of the conditions, was the doing of an affirmative act that rendered the

sidewalk dangerous to pedestrians who had the lawful right to use the walk and the right to assume that it was free and clear of any and all such dangerous conditions which might interfere with their safe passage thereon.

· The facts of this case come clearly within the rule announced in *Barton* v. *Capitol Market,* 57 Cal.App.2d 516 [134 P.2d 847], which was an action for personal injuries sustained through a fall on a slippery sidewalk bordering defendants' place of business. There defendants' employees used some substance to spray the corner of their building. When so sprayed a stain ran down from the building across the sidewalk. When wet, the stain became yellow, greasy and slippery. Under such circumstances it was there held that in the absence of statute, there is no affirmative obligation on an abutting property owner to keep a sidewalk in a safe condition, but if the abutting owner by positive action creates a condition which is likely to cause harm to persons lawfully using the sidewalk and a person is injured as a proximate result thereof, the property owner is liable.

Defendants' main argument is directed to their contention that the undisputed evidence shows that the plaintiff was aware of the dangerous condition, and the dangerous condition itself being plainly observable to anyone who cared to observe it, she was guilty of contributory negligence as a matter of law. They cite many cases beginning with *Davis* v. *California St. C. R. R. Co.,* 105 Cal. 131 [38 P. 647], and such cases as *Dunn* v. *Wagner,* 22 Cal.App.2d 51 [70 P.2d 498] and *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511 [50 P.2d 801], which in effect hold that where the uncontradicted testimony shows that the injured party had notice of a known danger and negligently walked into it without looking and without using ordinary care for his own personal safety, he cannot recover on account of any resulting injury. The question here presented under the evidence is by far the closest question presented on this appeal.

■ It is a general rule that a plaintiff, like a defendant, is held to exercise only that amount of care which would be exercised by a person of ordinary prudence in the same circumstances. ■ It is ordinarily a question for the jury whether or not a plaintiff has been guilty of contributory negligence. (*Jamison* v. *San Jose & S. C. R. R. Co.,* 55 Cal. 593.)

The rule with reference to forgetfulness of a known danger has been declared by our Supreme Court in *Giraudi*

v. *Electric Imp. Co.,* 107 Cal. 120, 125-126 [40 P. 108, 48 Am. St.Rep. 114, 28 L.R.A. 596], as follows:

"It is said that, if one was aware of a fact which should have put him upon his guard, he cannot rebut the presumption of contributory negligence by showing that he momentarily forgot it. This is true as a general proposition, but, like all other rules upon this subject, it must have a reasonable construction. To forget is not negligence, unless it shows a want of ordinary care, and it is a question for the jury."

This rule was cited in *Meindersee* v. *Meyers,* 188 Cal. 498 [205 P. 1078], where plaintiff fell in an open ditch during the nighttime, having had knowledge of its condition the preceding day. There the court said:

"Whether or not the information possessed by the plaintiffs was sufficient to impress upon their minds the danger incident to a use of the accustomed pathway in the dark, was a question for it to decide. We are unable to say, as a matter of law, and against the testimony of the plaintiffs, that they had such notice, and did appreciate such danger. Even assuming that their observation of the work done was more or less extensive during the day, it was for the jury to say whether it was a want of ordinary care for Mrs. Meindersee not to have the open excavation in mind when she returned home at 11:00 o'clock that night, for it has been repeatedly held that even with full knowledge of such danger one may be injured and yet be in the exercise of due care."

To the same effect are *Hall* v. *Barber Door Co.,* 218 Cal. 412 [23 P.2d 279]; *Christy* v. *Ulrich,* 113 Cal.App. 338 [298 P. 135] and *McStay* v. *Citizens National T. & S. Bank,* 5 Cal. App.2d 595 [43 P.2d 560], in which latter case plaintiff walked down several steps, where no hand rails were constructed, to enter the foyer of a hotel. The foyer was unlighted and in darkness. After standing there a while she retraced her steps and misstepped from a platform which she apparently had just previously crossed. In considering the question of her contributory negligence as a matter of law, based upon her previous knowledge of the condition of the steps, the court said at page 600:

". . . it is clear that whether or not the information possessed by Mrs. McStay was sufficient to impress upon her mind the danger incident to the use of the platform and steps in question was for the jury to decide as an issue of fact . . . Even forgetfulness of a known danger will not always operate

to prevent a recovery, for to forget is not negligence unless it shows a want of ordinary care. . . . And it has been repeatedly held that mere abstraction on the part of the injured person does not constitute contributory negligence as a matter of law. . . . The question of contributory negligence was, therefore, properly submitted to the jury.'' (Citing cases.)

To the same effect are *Wise* v. *Maxwell Hardware Co.,* 94 Cal.App. 765 [271 P. 918] ; *Du Val* v. *Boos Bros. Cafeteria Co.,* 45 Cal.App. 377 [187 P. 767] ; *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712 [103 P. 190] ; *Felker* v. *Redlands West Coast Corp.,* 17 Cal.App.2d 551 [62 P.2d 406] ; *Hechler* v. *McDonnell,* 42 Cal.App.2d 515 [109 P.2d 426] ; *Jacobson* v. *Oakland Meat etc. Co.,* 161 Cal. 425 [119 P. 653, Ann.Cas. 1913B 1194].

One of the latest expressions of the amount of knowledge of a known danger necessary to render a person negligent as a matter of law may be found in *Ridge* v. *Boulder Creek Union Junior-Senior H. S. Dist.,* 60 Cal.App.2d 453 [140 P.2d 990]. In that case a high school boy was operating a power saw without a guard or a fence around it. The evidence showed that guards were ordinarily used to prevent injury but others in the class used the saws without safety devices. The question of the boy's previous knowledge of the purpose and use of the saefty devices and his use of the saw without them was set up as a claim of contributory negligence as a matter of law. In discussing this subject the court said (from syllabus) :

''Knowledge that danger exists is not knowledge of the amount of danger necessary to charge a person with negligence in assuming the risk caused by such danger. The doing of an act with appreciation of the amount of danger, in addition to mere appreciation of the danger, is necessary in order to say as a matter of law that a person is negligent.''

So it may be said in the instant case. Plaintiff's casual observation of the substance which she took to be oil on the sidewalk on her first approach to it without walking through it, may not have been sufficient knowledge that a danger actually existed or may not have been sufficient knowledge to charge her with negligence in assuming the risk caused by such danger. While no particularly glaring conflicts are present, different conclusions as to the knowledge and conduct of the plaintiff may be reasonably drawn by different minds from the same evidence, and whether or not the information

possessed by plaintiff was sufficient to impress upon her mind the danger incident to a customary use of the sidewalk was a question for the jury. We are unable to say, as a matter of law, that plaintiff had such notice and did appreciate such danger.

■ Defendants next claim that the sum of $4,500 as damages is excessive. In addition to the evidence above recited, the evidence discloses that at the time of the fall plaintiff's lower limbs were momentarily paralyzed. She was taken on a stretcher, placed in an ambulance, and taken to the hospital. On her release from the hospital she was taken home. She was treated from that time on by the company's doctor at his office up until the time of the trial of this action which was on May 12, 1943. She testified that she suffered severe pains in the area of her back in the immediate vicinty of her coccyx, and also suffered severe headaches; that she experienced pains while sitting and reclining, both day and night; that it pained her to stoop and that her injuries were of such a permanent nature that she, according to the statement of the company doctor, might expect to experience them for the next ten or twelve years or ''probably for life.'' Mrs. Lay was, at the time of trial, 20 years of age. ■ The question of excessive damages is primarly directed to the trial court. ■ The power of the appellate courts to reverse a judgment because of excessive damages exists only when the facts are such as to suggest that the verdict was the result of passion, prejudice or corruption on the part of the jury. We have found nothing in the record which suggests such to us. ■ The evidence discloses substantial injuries, and considerable pain and suffering which may be permanent. (*Burke* v. *John E. Marshall, Inc.*, 42 Cal.App.2d 195 [108 P.2d 738]. The judgment in the reduced amount cannot be held to be excessive. (*Hamelin* v. *Foulkes*, 105 Cal.App. 458 [287 P. 526].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied February 4, 1944, and appellants' petition for a hearing by the Supreme Court was denied March 6, 1944.