[Civ. No. 5439.   Fourth Dist.   Oct. 8, 1956.]

ALLEN WALCHEL, Appellant, v. CORONADO MARINE WAYS (a Limited Partnership) et al., Defendants; WARREN H. POWERS, Respondent.

Clinton F. Jones for Appellant.

McInnis, Hamilton & Fitzgerals for Respondent.

GRIFFIN, J.—This is an appeal by plaintiff from a judgment against defendant Warren H. Powers, doing business as Coronado Marine Ways, in the sum of $500, on the ground that the damages awarded were grossly inadequate.  Plaintiff requests that a new trial be granted on the element of damages only.

Defendant operated a yard wherein boats were towed from the water on cradles by means of a rail and a power-operated cable winch.   Just prior to June 4, 1951, plaintiff's fishing boat (46 ft. in length) was resting on a scaffold on the ways in defendant's yard, on a day-rental basis.   He was painting the name on the stern by standing on a scaffold erected on horses 28 inches high.   This scaffolding was not visible from

the winch. On June 4, 1951, the owner of defendant company, apparently without warning plaintiff, started the winch and plaintiff fell to the ground but landed on his feet, causing some injury to him.

It appears that on November 4, 1951, about five months later, plaintiff was again involved in a serious automobile accident and sustained severe injuries resulting in a federal court judgment in his favor in the sum of $12,312.94. It also appears that plaintiff, in 1936 or 1937, was involved in an automobile accident which pulled his shoulder loose and necessitated surgery, i.e., bits of muscle were taken from his leg, holes were bored in his shoulder, and the bones were tied together with the muscle; that in 1949, in Detroit, he fell to the floor across a sawhorse while working on a scaffolding plastering a ceiling. He severely injured his back and was seven weeks in the hospital. He then came to California. In 1951, he was treated by a surgeon in Long Beach and fitted with a back brace. While working on his boat on June 4, 1951, he had been wearing this brace three to four days a week. After the fall on that day he saw a Dr. West or a Dr. Carpenter, who examined him. The doctor stated that there were contusions of his shoulders and back but no treatment was given. He was referred to another doctor for physical therapy for some period but did not complete the course of treatments prescribed. In September, 1952, he was hospitalized in Long Beach as a result of a fall on his fishing boat causing his right leg and right hip to swell. He was later sent to a Marine hospital in San Francisco and was not able to walk or stand. He was paralyzed from the waist down and could not raise his arms. He left the hospital on crutches.

The injuries described by plaintiff, as a result of his fall on June 4, 1951, were sickness of the stomach, coughing causing pain in the neck and lower spinal region, contusions on his back and shoulders, headaches, instability of his right leg, dizziness, impairment of hearing, etc., and inability to do heavy work.

He stated that just before June 4, 1951, he felt well enough to go back to work, had applied for a Union card, and after the claimed accident he went fishing during the summer months but claimed this was with considerable pain. The special damages here claimed were $149 in doctor, hospital and X-ray bills.

The only medical testimony produced by plaintiff as to

the particular injury on June 4, 1951, was one doctor who testified that on August 27, 1951, plaintiff came to his office and claimed that his arms felt numb and his shoulders would "crunch and grind," his neck "popped," the grip in his hands was weaker than before the injury, and that upon turning his head "shock" would go down both arms and his back; that the left leg was getting number all the way down; and that he limped on that side. This doctor said X-ray pictures were taken and he found no pathology at all and no change that he could attribute to the injury of June 4, 1951; that plaintiff was worried but did not appear to be in any acute pain; that he observed an old scar on the surface of his right shoulder from a former injury but the shoulder, reflexes, elbows and hands were normal; that plaintiff complained of pain in his back and its motion was limited in all directions about 50 per cent but an electromyelogram was taken and it reflected no nerve disease involving the lower extremities; that he felt there was nothing for him to offer plaintiff so he referred him to a Dr. Werden for examination and opinion; and that he had a report from him on January 7, 1952. Dr. Werden was not called as a witness for plaintiff.

Plaintiff called as his witness a Dr. Greenwood, who never saw plaintiff until April 7, 1954, nearly two and a half years after the automobile accident in November, 1951. He testified in full as to what he found in reference to plaintiff's condition at that time, i.e., plaintiff gave a history of his previous accidents and the doctor was asked the result of his tests. Objection was made because it was impossible for such a witness to testify that the condition found was the result of the boat injury on June 4, 1951. Considerable argument ensued (out of the presence of the jury) and it was conceded that this doctor testified to these same proffered findings in the federal court where plaintiff received a judgment for $12,312.94, without the witness endeavoring to segregate the portion of the injuries claimed to have been caused by that automobile accident and that claimed to have been caused by the other accidents. By consent, a limited amount of testimony was allowed as to plaintiff's present condition as disclosed by the examination of Dr. Greenwood. He concluded his testimony with the opinion that plaintiff was then totally disabled and that the only thing that might improve him was a spinal fusion of the two lower vertebrae and that he so testified in the federal court without endeavoring to segre-

gate the possible causes of the present condition of plaintiff. The doctor was not asked by counsel for plaintiff if he could so separate the portion of plaintiff's claimed injuries caused by the accident here involved. ■ Thereafter, on a motion to strike this doctor's testimony, the court concluded that from this testimony there was no possible means, except by speculation, by which the jury or the court could segregate them and granted the motion, informing the jury as to his reasons.

The main attack on this appeal is directed to this ruling. Plaintiff cites such authorities as *Katenkamp* v. *Union Realty Co.*, 36 Cal.App.2d 602 [98 P.2d 239]; *Ash* v. *Mortensen*, 24 Cal.2d 654 [150 P.2d 876]; and *California Orange Co.* v. *Riverside Portland Cement Co.*, 50 Cal.App. 522, 528 [195 P. 694].

We conclude, under the circumstances of this case, that the ruling of the court was proper. There was no attempt on the part of counsel for plaintiff to have the witness attempt to segregate the injuries caused by the other accidents from the one here involved, and there is no indication that he could do so. From the injuries described by the doctor, another verdict in the same amount allowed in the federal court for the same injuries, may well have been returned. To base a verdict upon the testimony of this medical witness as to the amount of the injuries caused by the accident here involved would, indeed, be speculative. The jury was told, in its instructions, that its verdict must be based on competent evidence and it is not allowed to speculate, either on the question of liability or damages.

There was some medical evidence presented, as well as testimony of the plaintiff, as to the injuries he claimed resulted from the instant action. ■ The jury and the trial judge, on a motion for new trial, fully considered the amount of the award based upon this evidence. Their finding in this respect, from the evidence produced, cannot be disturbed on appeal. (*Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529 [157 P.2d 57]; *Lay* v. *Pacific Perforating Co., Ltd.*, 62 Cal.App.2d 233 [144 P.2d 395].)

Judgment affirmed.

Barnard, P. J., concurred.