[L. A. No. 27580. In Bank. Feb. 25, 1964.]

THERESA KOPFINGER, Plaintiff and Appellant, v. GRAND CENTRAL PUBLIC MARKET et al., Defendants and Respondents.

854 

Ernest George Williams for Plaintiff and Appellant.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Defendants and Respondents.

PETERS, J.—Plaintiff appeals from a judgment of nonsuit rendered in an action growing out of a slip and fall resulting in serious personal injuries.

About noon on January 29, 1960, Theresa Kopfinger, then 76 years old, was walking on the public sidewalk on the east side of Hill Street in Los Angeles. She was proceeding toward the center aisle entrance of the Grand Central Public Market, where she was a regular customer, when she fell on the sidewalk in front of the north aisle, near one of the retail meat stalls operated by Melton. She slipped on some meat product, probably gristle, and there was a skid mark of approximately 6 to 8 inches. Plaintiff was hospitalized and underwent surgery as a result of injuries thus sustained.

The rules applicable to appeals from nonsuits are well settled.

■ "[A] nonsuit may be granted ' . . . "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ' " (*Meyer* v. *Blackman*, 59 Cal.2d 668, 671 [31 Cal.Rptr. 36, 381 P.2d 916].) A legitimate inference, of course, must be founded "On a fact legally proved." (Code Civ. Proc., § 1960.)

■ While the use of a nonsuit is a precedural device of great value when appropriately utilized, it may not be used to deprive a litigant of his right to have his case decided by the jury when under the evidence, and the inferences permissible therefrom, a verdict in his favor could reasonably be returned. In this light, we must examine the evidence here involved.

■ Grand Central is a large market, comprised of approximately 50 stalls. It runs through the entire block from Hill Street to Broadway, fronting on both, and opening directly onto the sidewalk, i.e., it is an open or arcade type market. Melton leased three stalls, two on the north side of the market, the third facing Hill Street and situated between the north and center aisles, just off the Hill Street sidewalk, from which it was separated only by an open aisle. Melton also leased a receiving and cutting room, which was located on the north side of the market. There were two other meat stalls in the market, one in the basement and the other on the Broadway side (neither of which is a party hereto). A delicatessen adjoined the east end of Melton's Hill Street stall. Melton's meat was delivered to him by approximately 20 suppliers. Neither the market nor Melton provided a parking area, and the deliverymen would park at the curb on Hill Street or in an alley to the south of the market.

Deliveries to Melton took place in the mornings, generally being completed by 10 or 11 o'clock. On the day of the accident, and prior to its occurrence, there had been approximately 12 deliveries. Deliveries were made by the drivers lifting or dragging the meat out of the trucks and wheeling it from the trucks to the cutting room on hand carts supplied by Melton, or by carrying the meat on their backs. In addition, a rendering company picked up Melton's waste every Friday (the accident happened on a Friday). The waste was wheeled in Melton's carts from the cutting room to the truck.

There was testimony to the effect that there were trimmings and waste on the cutting room floor, and that there were no mats outside the cutting room doors. There was no evidence as to whether the rendering company had been there on the day of the accident. Mr. Melton testified that he "might have at one time or another" noticed meat products along the side of the road or on the sidewalk. Mr. Abbott, assistant superintendent of the market, testified that the deliverymen drag the meat out of the trucks and that he had seen meat products fall to the ground; that some of the trucks have doors which are on the side and open over the sidewalk; and that he was aware of instances of fruit having fallen onto the sidewalk during the course of delivery. Grand Central employed several porters to clean and sweep the market aisles. While no exact pattern was used, it was estimated that the entire area was swept every 15 or 20 minutes. When sweeping around Melton's stall, the porters would usually but not always sweep the sidewalk in front of it. Whenever Melton desired the services of a porter, he obtained one, upon request, from the market. There were no porters stationed on the sidewalk at the time of deliveries or immediately thereafter. Melton had never requested that this be done, nor had this ever been discussed with the officers of the market. With respect to the gristle, the record shows that it was flattened, roughly the size of a 50-cent coin, less than a quarter of an inch thick, and dirty grey in color. It was disposed of by the assistant superintendent when he arrived at the scene of the accident. There was testimony that gristle is a tendon-like part that is found between layers of meat, on the inside. On this evidence the trial court granted a nonsuit. It was error to do so.

There was evidence which, if believed, established that: as a result of the manner of operation of Melton's stall and the market, some meat products fell to the ground in the course of Melton's activities. The inference is reasonably probable that this occurred during that morning's deliveries, the last of which had occurred over an hour before the accident. Thus, it may be inferred, the hazard had been permitted to exist for a period of time in excess of that which would have been permitted by a man of ordinary caution.

This was sufficient evidence to require the case to go to the jury. Had it been submitted to the jury, the rule is that: " '[T]he jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from

the testimony of other witnesses thus weaving a cloth of truth out of selected available material . . . . ' [Citation.] Furthermore, negligence may be proved circumstantially like any other issue of fact, and indirect evidence may outweigh direct evidence on the contested point. [Citation.] . . . '. . . direct evidence may be disbelieved and contrary circumstantial evidence relied upon to support a verdict or finding.' [Citation.]'' (*Bruce* v. *Ullery*, 58 Cal.2d 702, 711 [25 Cal. Rptr. 841, 375 P.2d 833].) It also must be remembered that ''Where reliance is placed on circumstantial evidence, it is not necessary that there be no possibility of deriving any other reasonable inference from the evidence.'' (*Varas* v. *Barco Mfg. Co.*, 205 Cal.App.2d 246, 262 [22 Cal.Rptr. 737].)

In reference to the substantive law applicable to this case, it is elementary that ''All persons are required to use ordinary care to prevent others being injured as a result of their acts; ordinary care has been defined as that degree of care which people of ordinarily prudent behavior could be reasonably expected to exercise under the circumstances of a given case.'' (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 317 [282 P.2d 12].) By failing to clean the sidewalk after taking deliveries to the business across it, knowing or having reason to know that this resulted in some debris falling to the ground and sidewalk, Melton and Grand Central conducted their business activities in a manner which a jury could reasonably find was in breach of their common-law duty of care to the plaintiff. Grand Central, the front of which was open to the sidewalk, and directly contiguous to it, was aware that deliveries took place across the sidewalk (to Melton and to other stalls as well), and that this occasionally resulted in debris falling on the sidewalk. Melton equivocated when asked whether he had seen such debris. The market provided porters who swept the aisles and the sidewalk. The testimony supports the inference that the meat product had been on the sidewalk at least for an hour or more before plaintiff fell. ▮ When the activities of a business enterprise, conducted for its economic benefit, are such as to create a hazard on the public sidewalk, of which fact the defendants know or have reason to know, and particularly when, as here, the sidewalk is immediately adjacent to the nonenclosed aisles of a large supermarket catering to the passing pedestrian traffic, there exists a duty to protect from injury those so endangered.

▮ Defendants are not here being held to answer for any

negligence in the manner of delivery, but rather for failing to provide adequately for the cleaning up of the sidewalk after deliveries. Thus, the fact that the deliveries were made by employees of meat wholesalers, independent contractors as to defendants, is not relevant in this action. Defendants failed to require or provide for delivery other than across the public sidewalk. Melton participated in the delivery process to the extent of supplying the carts which were used to convey the meat and waste across the sidewalk. Moreover, the activities of the independent contractor redound to the economic benefit of the defendants and are an integral part of defendants' enterprise.

It is clear that had this accident occurred on the premises occupied by the defendants, e.g., in the aisle, defendants would unquestionably have owed a duty of care to the plaintiff. Thus, the question is, given evidence upon the basis of which a jury could reasonably find that a hazard was created in the course of defendants' business activities and under such circumstances that defendants knew or had reason to know of the hazard and had adequate time to remove it, whether the fact that the accident occurred on the sidewalk immediately adjacent should have the legal effect of absolving defendants of a duty of care toward the plaintiff?[1]

The numerous cases to the effect that in the absence of statute there is no common-law duty on the occupant of land abutting a sidewalk to repair or maintain the sidewalk are not in point and are not inconsistent herewith. This is not a case of a landowner being held responsible for something with which his only connection is the fact of his ownership or use of the abutting land. We are here concerned with a hazard which resulted from activities carried on in the course of defendants' commercial enterprise. The defendants used the sidewalk every day for numerous deliveries. The cases relied upon by defendants involve structural defects in the sidewalk, the repair of which requires capital outlay and is usually done by the municipality, unlike this case, where the dangerous matter could be removed by merely washing down or sweeping the sidewalk, work not usually done by the city. The structural defect cases all recognize that there is liability when the defect is caused by the owner, or when the sidewalk is altered or constructed specially for the benefit of his property and serves a use apart from the ordinary and ac-

---

[1] In view of our holding that under the facts of this case there exists a common-law duty of care toward plaintiff, we do not decide the effect, if any, of Los Angeles Municipal Code section 56.08(c).

customed use of the sidewalk. (See, e.g., *Schaefer* v. *Lenahan*, 63 Cal.App.2d 324 [146 P.2d 929]; *Sexton* v. *Brooks*, 39 Cal.2d 153 [245 P.2d 496]; *Peters* v. *City & County of San Francisco*, 41 Cal.2d 419 [260 P.2d 55].)

*Winston* v. *Hansell*, 160 Cal.App.2d 570 [325 P.2d 569, 88 A.L.R.2d 326], is in accord with rather than contrary to the views herein expressed. There a demurrer was properly sustained in a failure to repair a cracked sidewalk case. Thus the case involves a failure to repair, not an artificial condition created by the owner and tenant in the course of their commercial enterprises. The case in no way involved the common-law duty to refrain from creating a condition injurious to pedestrians. The complaint contained no such allegations. The court was careful to point out that had there been such allegations the complaint would have been sufficient. In doing so, the court cited and relied upon the case of *Barton* v. *Capitol Market*, 57 Cal.App.2d 516, where at page 518 [134 P.2d 847], after recognizing that in "the absence of statute there is no affirmative obligation on the abutting property owner to keep the sidewalk in a safe condition" the court pointed out that it was "equally well settled, however, that if the abutting owner by positive action creates a condition which is likely to cause harm to persons lawfully using the sidewalk, and a person is injured as a proximate result thereof, the property owner is liable. Stated another way, the owner of premises abutting a sidewalk is under a duty to refrain from doing any affirmative act that would render the sidewalk dangerous for public travel." The instant case involves the last stated rule, not the one first stated. In the *Winston* case the only allegation to connect the defendant with the defective sidewalk was that defendant had used the sidewalk as a driveway, not that such use was responsible for the condition. Obviously, the use of a sidewalk as a driveway is as much intended as its use as a walkway. ▪ But in the instant case the property was used for a commercial purpose. In the course of activities connected with that purpose the hazard was created, defendants knew or should have known of the hazard, and did not remove it within a reasonable time. Thus there was shown a violation of the common-law duty to exercise due care. A direct causal connection has been shown between the defendants' activities and the injury. That is all that is required.

In the *Barton* case, *supra*, the abutting owner had sprayed his building with an oily substance, some of which had run

onto the sidewalk, causing it to be slippery and resulting in the fall of a pedestrian. As already indicated in the quote above, the court held that there is a duty to refrain from affirmative action that creates a danger to pedestrians.

*Lay* v. *Pacific Perforating Co.*, 62 Cal.App.2d 233 [144 P.2d 395], was another case of a slip and fall on an oily sidewalk. The abutting owner kept large quantities of oil on his property, and knew that in the past oil had escaped and accumulated on the sidewalk. The court, citing *Barton, supra*, found liability. And in *Sears, Roebuck & Co. v. Meyer*, 205 F.2d 321, the Ninth Circuit, applying California law, found liability where the plaintiff was injured in a fall caused by an oil slick. The fall occurred on the driveway portion of the sidewalk, the driveway leading to Sears' customer parking lot.

The theory of these cases controls the instant one. Thus the nonsuit was improper.

Plaintiff contends that the trial judge also erred in restricting the testimony of Mr. Nicola, plaintiff's expert witness. This was not error. ██ It is well established that "the trial court's ruling upon the sufficiency of the qualification of an expert will not be disturbed on appeal in the absence of a showing of abuse of discretion." (*Trust* v. *Arden Farms Co.*, 50 Cal.2d 217, 225 [324 P.2d 583, 81 A.L.R.2d 332]; 2 Wigmore, Evidence (3d ed. 1940) § 561, p. 641.) ██ Mr. Nicola testified that he had been a butcher for many years, that his store was at Sunset and Fountain in Los Angeles, that he had not observed deliveries at any other store. Upon objections being sustained to the questions posed, plaintiff made an offer of proof that by the testimony of this witness she sought to show that a certain condition exists when meat is delivered to retail meat merchants, and that it is the general custom in the area to clean up immediately after deliveries. The trial judge ruled, "there is no foundation that he knows anything about anything in the community, any custom of delivery in the community other than to his own place." Under such circumstances, the exclusion of this testimony, unsupported by an adequate foundation, was well within the discretion of the trial court.

██ Plaintiff also contends that the trial judge erred in excluding evidence of prior and subsequent accidents. "The question of admissibility is primarily one for the trial court and is confined to its sound discretion." (*Martindale* v. *City of Mountain View*, 208 Cal.App.2d 109, 116 [25 Cal.Rptr.

148] ; 2 Wigmore, Evidence (3d ed. 1940) § 444, p. 430.) ▉▉▉ None of the other accidents occurred on the Hill Street sidewalk. All but one occurred on the premises of the market, and involved grocery items other than meat. One of the proffered accidents took place on the Broadway sidewalk, where a woman fell in some water at the very time when an employee was cleaning it up.

While it is true that, where the circumstances are similar and not too remote, evidence of other accidents may be shown to prove a defective condition, knowledge, or the cause of an accident (2 Wigmore, Evidence (3d ed. 1940) § 458, p. 472; Witkin, Cal. Evidence, § 144, p. 165), here the circumstances of the proffered accidents were dissimilar to the facts of this case. (See *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210 [331 P.2d 617].) This being so, the trial court was well within its discretion in excluding such evidence.

The judgment appealed from is reversed.

Gibson, C. J., Traynor, J., Schauer, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Jefferson in the opinion prepared by him for the District Court of Appeal in *Koppfinger* v. *Grand Central Public Market* (Cal.App.) 33 Cal. Rptr. 139.