Filed 8/16/22  Banks v. Mastorakos CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRIDGET BANKS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>TOM MASTORAKOS et al.,<br><br>      Defendants and Respondents. | B309937<br><br>(Los Angeles County<br>Super. Ct. No. BC720428) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge. Affirmed.

Law Offices of Jude A. Akubuilo, Jude A. Akubuilo; Law Offices of George E. Omoko and George E. Omoko for Plaintiff and Appellant.

DorenfeldLaw, Inc., David K. Dorenfeld and Mazyar H. Mazarei for Defendants and Respondents.

_____

Appellant Bridget Banks tripped and fell on the sidewalk next to a store owned by respondents Tom Mastorakos and Victoria Mastorakos through their family trust (collectively the Mastorakoses).  A negligence lawsuit ensued, ending when the trial court granted the Mastorakoses' motion for summary judgment.  Banks then filed a motion for reconsideration, arguing that the trial court failed to consider a local law that she had cited during the summary judgment proceedings.  The trial court ruled that Banks's motion was meritless and ordered her to pay $960.00 in sanctions.

Banks appeals both the grant of summary judgment and the sanctions order.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Incident and Resulting Lawsuit

In 1976, the Mastorakoses bought a commercial property at 4263 West El Segundo Boulevard in Hawthorne, California.  By 2017, they had leased the building to a tenant who had not yet occupied the premises.  The Mastorakoses's son, Thomas Mastorakos (Thomas), helped his elderly parents manage the property.[1]

On the afternoon of November 9, 2017, Banks was walking down a stretch of El Segundo Boulevard in Hawthorne, California. As she passed the Mastorakoses' store, her foot caught on an uneven piece of pavement in the sidewalk, causing her to fall forward.  She later sought medical treatment for injuries on her hands and knees.

---

[1]     Because some of the parties share surnames, we refer to Thomas by his first name.  No disrespect is intended.

On September 4, 2018, Banks sued the Mastorakoses for premises liability and general negligence.[2] She claimed that she "tripped and fell on uneven concrete pavement covered by papers from [the Mastorakoses'] premises," and alleged that the Mastorakoses failed to both maintain the sidewalk in front of their store and to warn pedestrians of tripping hazards or other dangerous conditions.[3]

At her deposition, Banks reiterated that she could not see the uneven pavement because the sidewalk in front of the Mastorakoses' store was obscured by "papers spilled on the ground." When asked how many papers there were, Banks could not give an estimate. Banks's daughter-in-law, Chanise Moore, provided a declaration in which she stated that there was always litter piled in front of the Mastorakoses' store.

Banks also submitted photographs of the sidewalk.[4] The photographs show the uneven pavement that Banks tripped on, as well as a few dead leaves, crumpled papers, and similar litter on the sidewalk outside the Mastorakoses' store. One photograph purports to show a pile of mail on the floor inside the store, just underneath the mail slot.

---

[2]     Banks later amended her complaint to add the tenant as a defendant; he is not a party to this appeal.

[3]     The Mastorakoses filed a cross-complaint seeking indemnification from the city of Hawthorne. That cross-complaint is not part of this appeal.

[4]     These photographs are not dated, and, after initially testifying that her husband had taken the photographs the day after her fall, Banks admitted that she could not remember who had taken the photographs or when they had been taken.

Lastly, Banks submitted two opinions from two experts, who each concluded that the Mastorakoses failed to repair the uneven pavement and to clear the sidewalk of debris.

## II. Motion for Summary Judgment

On March 24, 2020, the Mastorakoses moved for summary judgment, arguing Banks could not prove that they had caused the allegedly dangerous condition leading to her fall. They attached Thomas's declaration, in which he stated that during occasional visits to the premises, he had never seen "any mail or paperwork for [the business] on the sidewalk, as the premises has its own mail slot to deliver mail directly into the premises."[5]

On July 13, 2020, Banks filed an opposition to the motion. She conceded that she "d[id] not know where the thrash [*sic*] came from," but argued that the Mastorakoses had a statutory duty under state and local law to maintain the sidewalk regardless, per section 5610 of the Streets and Highways Code and section 12.04.031 of the Hawthorne Municipal Code. Alternatively, Banks advanced Moore's declaration as evidence that the trash "came from the front door of the . . . defendant's property."

The trial court set a hearing on the summary judgment motion for August 3, 2020. On July 30, 2020, the trial court posted a tentative ruling granting the summary judgment motion. The tentative ruling explained that since Banks's accident occurred on the sidewalk, the sidewalk accident decisions doctrine controlled her case. Accordingly, Banks

---

[5] Thomas initially claimed that he visited the premises once a month in 2017. In a subsequent deposition, he revised this estimate to "about five times."

4

needed to show that the Mastorakoses caused or contributed to the allegedly dangerous condition of the sidewalk in order for them to be held liable for her fall. Since Banks's complaint identified the paper debris concealing the uneven pavement as the dangerous condition, she had the burden of demonstrating that the Mastorakoses created that accumulation of debris. The court ultimately determined that Banks had not proffered sufficient evidence to meet her burden.

At the hearing, Banks's counsel confirmed that he had read the trial court's tentative order. The trial court then asked Banks to explain "[h]ow . . . we know the defendants caused the debris," as opposed to it "blow[ing] down on the sidewalk from somewhere else." Banks pointed to Moore's testimony stating that there was always litter in front of the Mastorakoses' store, and contended that "the defendant cause[d] the debris . . . by not putting in place any form of protocol to clean the premises."

On August 5, 2020, the trial court adopted its tentative order and granted the motion for summary judgment.

## III. Motion for Reconsideration and Sanctions

On August 12, 2020, Banks filed a motion for reconsideration of the Mastorakoses' summary judgment motion. Banks requested that "the court excuse any neglect on the part of counsel . . . to the extent that there was a failure to direct the court's mind to the provisions of . . . [s]ection 12.04.031" of the Hawthorne Municipal Code. Banks insisted that this provision imposed liability on the Mastorakoses for their failure to maintain the sidewalk, and argued that the Mastorakoses had caused the trash to accumulate by "plac[ing] the entrance door to the business premises right on the sidewalk" and "fail[ing] to

5

inspect . . . the premises and remove papers dumped at the entrance."

On September 25, 2020, the Mastorakoses filed a motion for sanctions, claiming that the motion for reconsideration was "improper and frivolous." On October 6, 2020, they filed an opposition to Banks's motion.

On December 30, 2020, the trial court denied Banks's motion for reconsideration. The court confirmed that it had considered the municipal code provision, but found that Banks's uncertainty as to whether it had done so was "not a lawful basis for a motion for reconsideration." It denounced the motion in strong language, calling it "an abuse of [the] litigation process," and "admonish[ing] [Banks's] counsel not to file motions of this nature again." Accordingly, the court granted the Mastorakoses' request for sanctions, ordering Banks and her attorney to pay $960.00.

Banks timely appealed.

## DISCUSSION

## I. Summary Judgment

### A. *Applicable law and standard of review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "To secure summary judgment, a moving defendant may . . . disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 ["a moving defendant need not support

[her] motion with affirmative evidence negating an essential element of the responding party's case"].)

Summary judgment is subject to de novo review. In conducting our review, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.]" (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.) A triable issue of fact exists only if a trier of fact could reasonably conclude under the applicable standard of proof that a contested fact in favor of the opposing party is established. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)

In "reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. [Citation.]" (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 190.)

**B. Analysis**

Banks's complaint alleges two causes of action against the Mastorakoses: premises liability and general negligence. "The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) Therefore, the Mastorakoses were entitled to summary judgment

if they negated, or showed that Banks could not adequately establish, any one of these four elements.

Our review begins and ends with the first element, namely, whether the Mastorakoses owed pedestrians such as Banks a duty to warn them of a dangerous condition on the sidewalk or to repair it. For the reasons below, we conclude that they did not.

1. T*he Mastorakoses did not owe a duty to pedestrians*

In general, property owners owe a duty of care to persons on their property. (Civ. Code, § 1714, subd. (a) ["Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . except so far as the latter has, willfully or by want of ordinary care, brought the injury on himself or herself"]; see also *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 672 ["The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, . . ."].)

This duty does not vanish at the property line, but extends to abutting sidewalks. Section 5610 of the Streets and Highways Code expressly provides:

"The owners of lots or portions of lots fronting on any portion of a public street . . . shall maintain any sidewalk in such condition that the sidewalk will not endanger persons or property and maintain it in a condition which will not interfere with the public convenience in the use of those works or areas save and except as to those conditions created or maintained in, upon, along, or in connection with such sidewalk by any person other than the owner, under and by virtue of any permit or right

8

granted to him by law or by the city authorities in charge thereof, and such persons shall be under a like duty in relation thereto."

However, placing an absolute duty on the property owner for all injuries sustained on adjacent sidewalks would contravene the longstanding principle that liability for such injuries depends on whether the owner exerts actual control over a public walkway's condition. (*Lopez v. City of Los Angeles* (2020) 55 Cal.App.5th 244, 264.) Thus, although Streets and Highways Code section 5610 "places on the abutting property owner the duty to maintain the sidewalk . . . [it] has been held not to impose, by itself, a duty of care upon the abutting landowner for the safety of persons using the sidewalk." (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1331, fn. omitted.) Instead, "the abutting property owner is not liable in tort to travelers injured on the sidewalk[] unless the owner somehow creates the injurious sidewalk condition." (*Jones v. Deeter* (1984) 152 Cal.App.3d 798, 803.) This doctrine is sometimes referred to as the "sidewalk accident decisions doctrine." (See, e.g., *ibid.*)

Here, Banks failed to establish that the Mastorakoses in any way created either the uneven pavement in the sidewalk or the litter that allegedly concealed it. Banks presented no evidence as to how the pavement on the sidewalk became partially raised. And, while she did present evidence that the sidewalk in front of the Mastorakoses' store was often cluttered with papers and other debris, she did not offer any evidence that the Mastorakoses created or contributed to the accumulation of that litter. For example, she did not produce any evidence as to what kind of papers were on the sidewalk on the day of the fall, or to whom the papers had belonged. As the trial court implied

at the summary judgment hearing, in the absence of such evidence, the trash could have just as easily "blown down on the sidewalk" from parts unknown.

Even viewing all the evidence in the light most favorable to Banks, we cannot conclude that she established that the Mastorakoses owed a duty of care to pedestrians injured by the uneven pavement or litter on the sidewalk abutting their store.

### 2. *Banks's opposing arguments*

On appeal, Banks raises a confusing miasma of arguments. As another court observed of a similarly perplexing opening brief, "this document is strongly reminiscent of those magazine puzzles of yesteryear where the reader was challenged to 'guess what is wrong with this picture.'" (*People v. Dougherty* (1982) 138 Cal.App.3d 278, 280.)

With some effort, we have discerned four basic arguments against our conclusions. First, Banks contends that she successfully raised triable issues of fact as to whether the Mastorakoses created a dangerous condition on the sidewalk, pointing to Moore's declaration. However, Moore's statements merely raise a triable fact about the presence of litter on the sidewalk, not about whether the Mastorakoses caused or contributed to the litter. Banks also insists that Moore's statements indicate that "paper and debris trail[ed] from the door of the [Mastorakoses'] property to the sidewalk where Banks fell." This embellishes Moore's declaration, which merely states that "there was always a lot of trash and liter [*sic*] on the sidewalk, especially in front of the door leading into [the Mastorakoses'] business." This observation does not establish any causation between the Mastorakoses' conduct and the accumulation of litter on the sidewalk abutting their store.

10

Second, Banks attempts to distinguish her case from most sidewalk accident decision doctrine cases. She draws a distinction between cases involving "structural defects in the sidewalk" and cases in which "the dangerous [condition] could be removed by merely washing down or sweeping the sidewalk," suggesting that courts are more likely to find that a commercial property owner created the latter hazard in the course of conducting his business. (Bolding omitted.)

However, the case she cites for this proposition, *Kopfinger v. Grand Cent. Public Market* (1964) 60 Cal.2d 852 (*Kopfinger*), does not support it. In that case, our Supreme Court straightforwardly applied the sidewalk accident decisions doctrine to a complaint brought by a pedestrian against a butcher in an outdoor public market. (*Kopfinger*, *supra*, at p. 854.) The pedestrian sued the butcher after slipping on a piece of gristle on the public walkway outside his market stall. (*Ibid*.) The Court determined that the butcher had caused the hazard by receiving meat deliveries on the walkway, which led to occasional spills of meat byproducts. (*Id*. at pp. 857–858.) The Court found that the butcher's duty to the pedestrian stemmed from his solicitation of and participation in these deliveries, not from the type of hazard the deliveries created. (*Ibid*.) The legal distinction Banks tries to create simply does not exist.

Third, Banks argues that the trial court's ruling ignores triable issues raised on other theories of liability that are "reasonably embraced" by her complaint. (Bolding omitted.) Banks only articulates one alternate theory of liability, arguing that the Mastorakoses' failure to clean the trash from the sidewalk could constitute a public nuisance. The case she cites to support this theory neatly explains why it does not hold water:

11

"[A]n abutter has always been liable for injuries occurring on a public sidewalk which were caused by the abutter's negligence or nuisance involving some act or omission other than the mere failure to maintain or repair the sidewalk." (*Williams v. Foster* (1989) 216 Cal.App.3d 510, 515.) The Mastorakoses' alleged failure to maintain the sidewalk cannot establish liability for a cause of action based on negligence or nuisance.

Fourth, Banks contends that the trial court violated her due process rights by raising and applying the sidewalk accident decisions doctrine without giving her an opportunity to argue against it. This argument is meritless. The trial court's tentative ruling, issued four days prior to the summary judgment hearing, provided notice that the court intended to apply the sidewalk accident decisions doctrine. At the hearing, Banks confirmed that she had read the tentative ruling and the trial court actively solicited argument on whether the Mastorakoses contributed to the litter that accumulated outside their store. Banks's failure to put forward specific arguments against the sidewalk accident decisions doctrine has no bearing on her due process rights. (See *Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 706 ["'[D]ue process of law requires that the party opposing [a summary judgment] motion must be provided an opportunity to respond to [a] ground of law identified by the court and must be given a chance to show there is a triable issue of fact material to said ground of law'"].)

## II. Sanctions

Finally, Banks appeals the order imposing sanctions for her motion for reconsideration.

Section 1008, subdivision (a) of the Code of Civil Procedure provides that "any party affected by [a trial court's] order may

. . . make application to the same judge or court that made the order[] to reconsider the matter and modify, amend, or revoke the prior order." The motion must be "based upon new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (a); *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

If a motion for reconsideration is meritless, frivolous, or filed in bad faith, the trial court may order sanctions against the movant pursuant to section 128.7 of the Code of Civil Procedure. (Code Civ. Proc., § 1008, subd. (d); *Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 123; *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 26.) We review a trial court's decision to sanction a party for a meritless motion for reconsideration under a deferential abuse of discretion standard. (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921 [articulating standard of review for sanctions imposed under Code Civ. Proc., § 128.7].)

Here, the trial court sanctioned Banks for submitting a motion for reconsideration that raised no new facts, circumstances, or issues of law. The only ground for reconsideration Banks alleged was her uncertainty as to whether the court properly considered a municipal code provision Banks cited during the summary judgment proceedings—a provision that was not even relevant to the viability of Banks's lawsuit.[6]

---

[6] The trial court did make one error in this case, albeit a harmless one. At the hearing on Banks's motion for reconsideration, the court agreed with Banks's argument that section 12.04.031 of the Hawthorne Municipal Code trumped an analogous state law provision (namely, Sts. & Hy. Code, § 5610) due to the home rule provision of the California Constitution. The home rule provision allows charter cities to govern their own municipal affairs unconstrained by state law. (Cal. Const. Art.

13

The trial court did not abuse its discretion in determining that this motion utterly failed to comply with the requirements set forth in Code of Civil Procedure section 1008, subdivision (a), and thus merited sanctions against the movant.

Banks argues that she would not have filed the motion for reconsideration were it not for the trial court's "prejudicial" and "improper[]" decision to grant summary judgment, and urges us to reverse the sanctions order to avoid compounding the prejudice besetting her.[7]

Banks provides no legal authority for the proposition that an otherwise meritless motion for reconsideration should not be subject to sanctions if the motion was filed to avoid prejudice from an improper adverse ruling. (*Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 190 ["'[a]n appellant must provide an argument and legal authority to support his contentions'"].) Nor does she explain how her only recourse in

_____

XI, § 5, subd. (a).) However, the home rule provision only applies to cities that are governed by charter. Hawthorne does not have a city charter, so its municipal code remains subordinate to state law. Therefore, the Streets and Highways Code prevails.

[7] At oral argument, Banks argued that the trial court did not have the power to order sanctions, because it could not have granted Banks's motion for reconsideration after entering judgment on the Mastorakoses' summary judgment motion. By raising this argument for the first time on appeal and at oral argument, Banks has forfeited the issue. (*People v. Venice Suites, Inc.* (2021) 71 Cal.App.5th 715, 724 ["'An argument or theory will . . . not be considered if it is raised for the first time on appeal'"]; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1185 ["'[w]e will not consider an issue not mentioned in the briefs and raised for the first time at oral argument'"].)

this situation was to file an invalid motion for reconsideration, as opposed to filing an appeal.  And in any event, we have already concluded that the trial court's grant of summary judgment was entirely proper.

## DISPOSITION

The judgment and sanctions order are affirmed.
Respondents are awarded costs on appeal.
<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

15